IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALVIN HAWKINS, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| | ) COLLECTIVE ACTION |
| Plaintiff, | ) ) CASE NO. _____ |
| v. | ) ) JUDGE _____ |
| MIDDLE TENNESSEE PIZZA, INC.; PATRICIA HOUSEMAN; DOE CORPORATION 1-10; JOHN DOE 1-10 | ) ) JURY DEMAND ) ) |
| Defendants. | ) ) ) |

**COLLECTIVE ACTION COMPLAINT**

1. Alvin Hawkins, on behalf of himself and similarly-situated individuals, brings this action against Defendants Middle Tennessee Pizza, Inc.; Patricia Houseman; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA").

2. Defendants operate at least eleven Domino's Pizza locations in Tennessee ("Defendants' Domino's stores").

3. Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Domino's stores.

4. Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5. All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## JURISDICTION AND VENUE

6. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

A. **Plaintiff**

**Alvin Hawkins**

8. Plaintiff Alvin Hawkins is a resident of Shelbyville, Tennessee (Bedford County).

9. Plaintiff was an "employee" of all the Defendants as defined in the FLSA.

10. Plaintiff has given written consent to join this action.

B. **Defendants**

**Middle Tennessee Pizza, Inc.**

11. Defendant Middle Tennessee Pizza, Inc. is a domestic corporation authorized to do business under the laws of Tennessee.

12. Middle Tennessee Pizza, Inc. has a principal address at 421 E. Vine Street, Murfreesboro, TN.

13. Middle Tennessee Pizza, Inc. was formed as a for-profit corporation in 1979 and has been in business since that time.

14. Middle Tennessee Pizza, Inc. operates the Defendants' Domino's stores.

15. Upon information and belief, Middle Tennessee Pizza, Inc. owns at least eleven Domino's stores in Tennessee.

16. Upon information and belief, Patricia Houseman has entered into a franchise agreement with Domino's Pizza, Inc., Domino's Pizza Franchising, LLC, and/or Domino's Pizza, LLC regarding the operation of the Middle Tennessee Pizza, Inc. Domino's Pizza stores.

17. Middle Tennessee Pizza, Inc. lists eleven separate locations on their website:

    a. Tullahoma

    b. Lebanon

    c. Columbia

    d. Dickson

    e. Franklin

    f. McMinnville

    g. Shelbyville

    h. Smyrna

    i. Murfreesboro Northfield

    j. Murfreesboro Riverdale

    k. Murfreesboro Campus

18. On its website, Middle Tennessee Pizza Inc. describes itself as "a franchise of Domino's Pizza."

19. Middle Tennessee Pizza, Inc. was the entity that appeared on Plaintiff's paystubs for work he completed for Defendants' Domino's stores.

20. Middle Tennessee Pizza, Inc. had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21. Middle Tennessee Pizza, Inc. had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

22. At all relevant times, Middle Tennessee Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23. Middle Tennessee Pizza, Inc. was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

24. At all relevant times, Middle Tennessee Pizza, Inc. had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25. Middle Tennessee Pizza, Inc.'s gross revenue exceeded $500,000 per year.

**Patricia Houseman**

26. Defendant Patricia Houseman is the owner of Middle Tennessee Pizza, Inc. and the Defendants' Domino's stores.

27. Upon information and belief, Patricia Houseman is the owner of Middle Tennessee Pizza, Inc.

28. Upon information and belief, Patricia Houseman is the president of Middle Tennessee Pizza, Inc.

29. Upon information and belief, Patricia Houseman operates at least eleven Domino's stores in Tennessee pursuant to franchise agreement(s) she has entered with Domino's Pizza, Inc., Domino's Pizza Franchising, LLC, and/or Domino's Pizza, LLC.

30. Patricia Houseman is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA because she owns and operates the Defendants' Domino's stores, serves as president and owner of Middle Tennessee Pizza, Inc., ultimately controlled significant aspects of the Defendants' Domino's stores' day-to-day functions, and ultimately controlled compensation and reimbursement of employees. 29 U.S.C. § 203(d).

31. Upon information and belief, Patricia Houseman is the franchisee of the Defendants' Domino's stores.

32. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had financial control over the operations at each of the Defendants' Domino's stores.

33. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had a role in significant aspects of the Defendants' Domino's stores' day to day operations.

34. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had control over the Defendants' Domino's stores' pay policies.

35. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

36. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

37. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

38. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had the power to transfer the assets and liabilities of the Defendant entities.

39. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had the power to declare bankruptcy on behalf of the Defendant entities.

40. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

41. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

42. At all relevant times, by virtue of her role as owner and president of the Defendants' Domino's stores, Patricia Houseman has had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

43. The Defendants' Domino's stores function for Patricia Houseman's profit.

44. Patricia Houseman has had influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

45. Upon information and belief, Defendants owned, operated, and controlled other entities and/or limited liability companies that also comprised part of the Defendants' Domino's stores, and qualified as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Tennessee wage law.

46. Upon information and belief, Patrician Houseman owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's operation.

47. Upon information and belief, the franchisor, Domino's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's stores.

48. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

49. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Tennessee wage law.

50. Upon information and belief, Patricia Houseman has entered into co-owner relationships with a number of her managers and/or business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Tennessee wage law.

51. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

## COLLECTIVE FACTUAL ALLEGATIONS

52. During all relevant times, Defendants operated the Defendants' Domino's stores.

53. Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Domino's stores.

54. All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties.

55. When there were no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

56. The job duties performed by delivery drivers inside the store are not related to their duties while they were out on the road making deliveries.

57. Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

58. The delivery drivers at the Defendants' Domino's stores work "dual jobs."

59. Defendants pay delivery drivers at Defendants' Domino's stores at or near minimum wage for all hours worked.

60. Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

61. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

62. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile

maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

63. Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incurred cell phone and data charges all for the primary benefit of Defendants.

64. The Defendants' Domino's stores reimburse their delivery drivers at a per mile rate.

65. Defendants reimburse their drivers for their automobile expenses by paying them approximately $.28 per mile.

66. Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

67. The Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

68. The Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

69. The Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

70. The Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses that delivery drivers incur.

71. The Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

72. The Defendants' Domino's stores do not even reasonably approximate the delivery drivers' actual expenses.

73. The Defendants' Domino's stores reimburse rate is not a reasonable approximation of the delivery drivers' actual expenses.

74. The Defendants' Domino's stores' reimbursement payments result in reimbursements that are and/or were less than the IRS standard business mileage rate for each mile driven.

75. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a. 2018: 54.5 cents/mile
    b. 2019: 58 cents/mile
    c. 2020: 57.5 cents/mile
    d. 2021: 56 cents/mile

76. Defendants also require delivery drivers to download and use an application on their phones to track miles.

77. Thus, the delivery drivers at the Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

78. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Tennessee law.

79. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

80. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred

unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

81. Defendants have willfully failed to pay federal and Tennessee state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's stores.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

82. Plaintiff has worked at the Domino's store at 757 Madison Street in Shelbyville, Tennessee from approximately 2019 to the present.

83. When Plaintiff is not delivering food, he works inside the restaurant. His work inside the restaurant includes building pizza boxes, making pizzas, cleaning, preparing food items, taking orders and completing other duties inside the restaurant as necessary.

84. Plaintiff works dual jobs.

85. Plaintiff's inside duties are not related to his delivery duties.

86. Plaintiff is paid approximately $7.50 per hour by Defendants for the hours he works.

87. Plaintiff is required to use his own car to deliver pizzas.

88. Plaintiff is reimbursed a per mile rate for each of the delivery orders he completed.

89. Plaintiff is reimbursed $.28 for each mile driven.

90. Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

91. Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

11

92. Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

93. Defendants do not track the actual expenses incurred by Plaintiff.

94. Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

95. Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

96. Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

97. Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

98. In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. During this time period, Plaintiff was reimbursed $.28 per mile. Considering Plaintiff's estimate of about 4.5 miles per delivery (4.5 miles x $.58 per mile = $2.61), Defendants under-reimbursed him by about $1.35 per delivery ($2.61 - $1.26). Since Plaintiff completed approximately 4 deliveries per hour, Plaintiff was under-reimbursed by approximately $5.40 per hour ($1.35 x 4 deliveries per hour).

99. Additionally, Defendants now require delivery drivers to download and use an application on their phones to track their miles driven.

100. At one point, Defendants reimbursed Plaintiff for data usage on his phone related to using the application.

101. However, Defendants stopped reimbursing Plaintiff and other delivery drivers for data usage.

102. But Defendants still require Plaintiff to use the application for making deliveries.

103. Plaintiff incurs additional costs such as data usage and other fees for using the application, which also undercuts his hourly wage.

104. Defendants failed to pay Plaintiff minimum wage as required by law.

## COLLECTIVE ACTION ALLEGATIONS

105. Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants in Tennessee, during the three years prior to the filing of this Collective Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

106. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

107. Defendants' unlawful conduct is pursuant to a company policy or practice.

108. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

109. Defendants' unlawful conduct has been widespread, repeated, and consistent.

110. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

111. The FLSA Collective members are readily identifiable and ascertainable. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSE OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

112. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

113. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

114. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

115. Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

116. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

117. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

118. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Alvin Hawkins prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. An award of prejudgment and post-judgment interest.

D. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

E. Such other legal and equitable relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

Dated: March 31, 2021

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Philips Plaza
414 Union Street, Suite 900

Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

**ANDREW R. BILLER\***
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
abiller@billerkimble.com

**\*Pro Hac Vice Application Forthcoming**

*Counsel for Plaintiff and Opt-In Plaintiffs*