IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Alvin Hawkins, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:21-cv-00266 |
| Plaintiff, | Chief Judge Waverly Crenshaw, Jr. |
| v. | Magistrate Judge Barbara D. Holmes |
| Middle Tennessee Pizza, Inc., *et al.*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiff Alvin Hawkins asks the Court to approve the settlement between Plaintiff and Defendants Middle Tennessee Pizza, Inc. and Patricia Houseman. The proposed Settlement Agreement, attached as Exhibit 1, resolves the collective claims raised in this lawsuit. Defendants do not oppose this Motion. The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

/s/ Riley Kane
Andrew R. Biller (*pro hac vice*)
Andrew P. Kimble (*pro hac vice*)
Riley E. Kane (*pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

and

David W. Garrison (TN Bar No. 024968)
Joshua A. Frank (TN Bar No. 033294)
Barrett Johnston Martin & Garrison,
LLC
Phillips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
*dgarrison@barrettjohnston.com*
*jfrank@barrettjohnston.com*

*Counsel for Plaintiff and the FLSA Collective*

Plaintiff Alvin Hawkins and the opt in Plaintiffs (collectively, "Plaintiffs") and Defendants Middle Tennessee Pizza, Inc. ("MTPI") and Patricia Houseman (collectively, "Defendants") have reached a Settlement Agreement (Exhibit 1)[1] that, if approved, will resolve all claims against Defendants that Plaintiffs have asserted in this lawsuit. Defendants do not oppose this Motion and consent to certification of the FLSA collective for settlement purposes only. Plaintiffs also submit a declaration of Attorney Andrew Biller in support of this Motion, which is attached as Exhibit 2.

## 1. Background of the Lawsuit and the Claims

Alvin Hawkins, a pizza delivery driver, filed this wage and hour lawsuit on March 31, 2021. *See* Complaint, Doc. 1. This lawsuit alleges several wage and hour claims, predominantly centered on Defendants' vehicle reimbursement policy. On May 19, 2021, the Parties stipulated to sending notice. *See* Stipulation, Doc. 26; Order Approving Stipulation, Doc. 28. In total, 145 Plaintiffs opted-in to this lawsuit.[2]

Defendants own and operate 11 Domino's franchise locations.[3] Defendants dispute that Patricia Houseman qualifies as an "employer" for purposes of wage and hour laws.

---

[1] Exhibit 1 is an unexecuted copy of the settlement agreement. The parties will separately file signed copies of the Settlement Agreement following execution.
[2] One opt-in Plaintiff, Timothy Parker, submitted his consent-to-join form after the Parties reached this settlement. *See* Doc. 51-1. He would be the first Late Claimant, as discussed below, but accounting for him, there would be 146 opt-in Plaintiffs.
[3] MTPI currently owns 11 stores. During the relevant time period, one store changed locations and another closed.

Plaintiffs allege that Defendants require the FLSA Collective Members to provide their own vehicles to deliver Defendants' pizza and other food items. Plaintiffs further allege that the amount that Defendants reimbursed the FLSA Collective Members for the use of their vehicles did not adequately compensate them for their vehicle expenses, thus dropping their wages below the statutory minimum wage. *See, e.g.*, *Waters v. Pizza to You, L.L.C.*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604 (S.D. Ohio May 7, 2021) (holding that, as a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service.); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, at *21 (S.D. Ohio Nov. 5, 2019). Defendants contend that the FLSA Collective Members were properly reimbursed for their vehicle-related expenses as required by federal law and, therefore, Plaintiffs were compensated at or above minimum wage. *See, e.g., Bradford v. Team Pizza, Inc.*, 2021 U.S. Dist. LEXIS 200773 (S.D. Ohio Oct. 19, 2021) (holding that, as a matter of law, employers are permitted to "reasonably approximate" the employee's expenses and reimburse that amount); *Kennedy v. Mountainside Pizza, Inc.*, No. 19-CV-01199-CMA-STV 2020 U.S. Dist. LEXIS 154792 (D. Colo. Aug. 26, 2020) (same).

Early in the case, the Parties stipulated to the distribution of FLSA collective action notice and to stay the case for mediation. *See* Doc. 26. The Court granted these requests. *See* Doc. 28. After the close of the notice period, the Parties held an all-day mediation with Judge F. Bradford Stillman (ret.) on November 3, 2021, that resulted in the settlement currently before the Court. The efficient resolution of this matter is due in no small part to both Parties' and expertise in pizza delivery driver litigation.

Plaintiffs now ask the Court to approve the settlement, the award of fees, reimbursement of costs, and the incentive award.

## 2. Standard for Settlement Approval

Where an employee files a lawsuit asserting FLSA claims against his employer, he may settle his case subject to judicial approval of the settlement with respect to the FLSA claims. *Sarrell v. Waupaca Foundry, Inc.*, No. 1:17-cv-56-TRM-SKL, 2018 U.S. Dist. LEXIS 128365, at *3 (E.D. Tenn. July 11, 2018) (citing *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores v. U.S.*, 679 F.2d 1350 (11th Cir. 1982))

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Sarrell*, 2018 U.S. Dist. LEXIS 128365, at *4 (quoting *Lynn's Food Stores*, 679 F.2d at 1355.). With respect to FLSA settlements, the court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 U.S. Dist. LEXIS 104269, at *2 (M.D. Tenn. July 5, 2017); *Sarrell*, 2018 U.S. Dist. LEXIS 128365, at *4. As described below, the settlement meets this standard.

In a collective action under the FLSA, factors relevant to finding a settlement fair, reasonable, and adequate include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6)

3

the reaction of absent class members; and (7) the public interest. *West*, 2017 U.S. Dist. LEXIS 104269, 2–3. Further, "[t]he Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Id.*

### 3. Summary of Settlement Terms

In total, the Agreement requires Defendants to set aside $200,000.00 to settle the claims asserted in this lawsuit.[4] $185,000.00 makes up the "Collective Fund," which will be distributed to Plaintiffs (i.e., those who have submitted a Consent to Join form) on a pro rata basis according to the number of miles driven by each Plaintiff during the release period.[5] The Agreement additionally creates a $15,000.00 "Reserve Fund,"[6] which allows delivery drivers who could have joined the FLSA collective, but did not,[7] the *option* to join as "Late Claimants"[8] and settle their claims according to the terms of this Settlement Agreement.[9] Late Claimants will have their award amount calculated on the same basis as the Opt-In Plaintiffs (e.g., each mile driven during the relevant time period will be valued the same as a mile driven by an Opt-In Plaintiff), but the statute of limitations on their claim will continue to run until the date they file a late claim. Both funds will

---

[4] Exhibit 1, ¶¶ 4.A, 4.C.i–iv, 7.D–E.

[5] *Id.* at ¶ 4.C.iii.

[6] *Id.* at ¶ 4.C.iv.

[7] "Eligible Reserve Fund Participant(s)" means any Delivery Driver employed by Defendants during the Release Period who did not return a consent to join form before November 3, 2021 and therefore did not or will not receive a payment from the Collective Fund. *See id.* at ¶ 3.

[8] "Late Claimants" means any current or former delivery driver employed between May 10, 2018 through November 3, 2021 who makes a claim against the Reserve Fund. *See id.* at ¶ 3.

[9] *Id.* at ¶ 4.C.iv.a. ("Eligible Reserve Fund Participants have the option to, but are not required to, participate in the Reserve Fund as Late Claimants. Late Claimants who elect to participate in the Reserve Fund will receive payment in an amount equal to the Late Claimant's potential prorated share of the Collective Fund had the Late Claimant filed a timely consent to join, but proportionately reduced by that amount time-barred by the statute of limitations…").

be maintained until November 3, 2024, after which any remaining unclaimed funds will revert to Defendants.[10]

Due to the structure of this Agreement, any court-approved Claims Administrator fees or costs, and any court-approved advanced litigation costs, incentive awards, and attorneys' fees will be deducted from the Collective and Reserve Funds on a pro rata basis.[11] But, Plaintiffs' Counsel will only receive attorney's fees from the Reserve Fund when payments are made to a Late Claimant.[12]

In exchange for these payments, Plaintiffs and Late Claimants agree to release "all wage and hour claims . . . accrued from three (3) years prior to the date the Opt-In Collective Member filed a Consent to Join form in this Lawsuit (or from the date when one was filed on his or her behalf), or made a claim to receive money from the Reserve Fund, through November 3, 2021, arising out of the facts asserted in the Lawsuit . . . ." *See* Exhibit 1, ¶ 6.B (setting forth the specific release of claims).[13] Those who have not opted in and those who do not access the Reserve Fund do not release any claims.

---

[10] *Id.* at ¶¶ 4.C.iii.e–f., 4.C.iv.e.

[11] *Id.* at ¶ 4.C.ii.

[12] *Id.* at ¶ 4.C.iv.b.

[13] If the Court finds it necessary for Late Claimants to file their consent in writing to join with the Court, Paragraph 6.E of the Settlement Agreement provides that Defendants will file a copy of the Late Claimant's canceled settlement check, which contains the release language and an acknowledgement by the Late Claimant that they consent to join this lawsuit and be bound by this settlement. *See id.* at ¶¶ 6.B-E.

5

4. **The Settlement provides a fair resolution of disputed claims.**

**The Risk of Fraud or Collusion.** The Settlement Agreement before the Court is the result of an all-day mediation between attorneys who are highly experienced in pizza delivery driver litigation with Judge Stillman, a mediator experienced and well-versed in the field of pizza delivery driver litigation. This process, along with the numerous legal and factual disputes regarding Plaintiffs' claims, demonstrate that the settlement was reached without fraud or collusion through arms-length negotiations. Therefore, this factor weighs in favor of approval.

**Complexity, expense, and likely duration.** Wage and hour collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and potentially necessary expert testimony. If the case proceeded, the parties' many legal and factual disputes would have required substantial discovery and the Court's adjudication of numerous dispositive motions. Such litigation, discovery, and (if necessary) the employment of experts would result in substantial expense for both sides. As a result, this factor weighs in favor of approving the settlement.

**Amount of discovery engaged in by the Parties.** The Parties have engaged in preliminary discovery, focused on the information necessary for settlement negotiations. Defendants provided mileage reimbursement and payroll records from which Plaintiffs could calculate potential damages and evaluate Defendants' reimbursement rate. The discovery completed allowed the Parties to negotiate at mediation and value the case for settlement purposes. This direct method

saved costs for both Parties, as stated above, by cutting straight to the chase and avoiding otherwise-likely discovery disputes.

**Likelihood of success on the merits.** There are several areas of dispute in this case with uncertain outcomes, which support this settlement.

First, the Parties dispute how to measure Defendants' compliance with the FLSA. Based upon Defendants' records, Plaintiffs drove approximately 1.13 million miles and Defendants paid approximately $335,000 in reimbursements during the relevant time period. Plaintiffs calculated that this resulted in an average reimbursement rate of approximately $0.29 per mile. Defendants will note, however, that many of the Plaintiffs were paid at a wage above the minimum required under the FLSA during some portion of their employment.

As noted above, courts disagree on the proper methodology for reimbursing delivery drivers. Plaintiffs contend the proper method is to either (1) track and reimburse the drivers' actual expenses or (2) reimburse the drivers at the IRS business mileage rate. *See Waters*, 2021 U.S. LEXIS 87604, at *27–28; *Hatmaker*, 2019 U.S. Dist. LEXIS 191790, at *21. Defendants, on the other hand, contend that they can "reasonably approximate" expenses. *See Bradford*, 2021 U.S. Dist. LEXIS 200773, at 9–10; *Kennedy*, 2020 U.S. Dist. LEXIS 154792, at *14. These two legal theories greatly affect liability and damages as well as how the case proceeds in terms of discovery.

If Plaintiffs prevailed, and the Court determined that the IRS rate applies as a matter of law, Defendants would be liable for approximately $.275 per mile (the difference between the reimbursements Defendants paid and reimbursement at the IRS rate). If Defendants prevailed, and the Court determined that Defendants are permitted to "reasonably approximate" drivers' expenses, Plaintiffs would argue that $.29 does not "reasonably approximate" the drivers'

expenses and that the FLSA collective suffered damages. Experts would likely have been needed to opine on what a "reasonably approximate" amount would be or what a process of "reasonable approximation" would look like, resulting in a range of potential damages (with no damages being a possible outcome). Thus, Plaintiffs' ultimate success is uncertain. In addition, as Defendants agreed to proceed on a collective basis for settlement purposes only, Plaintiffs' ability to proceed as a collective is also uncertain given that Defendants would argue that their fact-specific claims are inappropriate for collective resolution.

The potential unpaid wages for the Opt-In Plaintiffs in this case range from $0 to approximately $306,750. This range is based on at least two disputed points. First, this estimate is calculated using the IRS standard business mileage rate and subtracting out the reimbursement amounts paid. Defendants deny that the IRS rate applies in this case. Instead, they claim that (1) Defendants were permitted to "reasonably approximate" delivery drivers' expenses and (2) Defendants did, in fact, reasonably approximate expenses, meaning the Opt-In Plaintiffs' damages are $0. Second, this estimate is based on a three-year statute of limitations, which assumes that Plaintiffs will be successful in their allegation that Defendants' violation is willful under the FLSA. Defendants deny that FLSA willfulness applies to Defendants' actions here and would dispute that claim if the case went forward. Last, in addition to these unpaid wages, Plaintiffs would seek liquidated damages for the same amount, $306,750. Defendants deny that Plaintiffs would be entitled to liquidated damages as Defendants contend they acted in good faith and had reasonable grounds for believing that their reimbursement practices complied with the FLSA.

Moreover, the FLSA entitles prevailing plaintiffs to recover their reasonable attorney's fees and costs. If Defendants prevailed on their legal theory, then the unpaid wages would range from $0 to $306,750 (with the possibility of a result within that range).

The risk of a worse result weighs in favor of settling the case at this time and supports the settlement reached here. As it stands, the Agreement provides substantial relief to the aggrieved workers.

**Trial counsel's judgment.** Plaintiffs' Counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution—especially because this prompt settlement ensures the Plaintiffs are paid quickly, rather than after years of litigation.

**The reaction of absent class members.** Because all Plaintiffs are present in this litigation by opting-in to the case and because the opt-in Plaintiffs authorized Plaintiff Hawkins to settle this case on their behalf,[14] this factor is unnecessary to consider. *See West*, 2017 U.S. Dist. LEXIS 104269, at *3.

**The Public Interest.** If the Court otherwise finds that the settlement reflects a reasonable compromise over issues disputed, then the public interest is met by "promote[ing] the policy of encouraging settlement of litigation.'" *Id.* at *5 (quoting *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *9 (E.D. Ky. Oct. 23, 2008)). Further, this settlement agreement is "public rather than confidential," which "supports the interests of

---

[14] *See* Proposed Notice of Collective Action Doc. 26-1, PageID 87 ("If I am not a named plaintiff myself, I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case, including settlement, and all other matters pertaining to the lawsuit.").

other employees, the Congress, and the public, in seeing that FLSA disputes are resolved in a fair and reasonable way that is consistent with the requirements of the statute." *Id.* at *6.

### 5. The payment of attorney's fee and costs is reasonable.

"An award of attorneys' fees and costs to Plaintiffs' Counsel must be 'reasonable under the circumstances.'" *Edwards v. SumiRiko Tenn., Inc.*, No. 3:20-cv-83, 2020 U.S. Dist. LEXIS 151059, at *4 (E.D. Tenn. Aug. 20, 2020) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).'

Plaintiffs' Counsel applies for an award of one-third of the Collective Fund as attorney's fees ($61,666.67) and an award of up to one-third of the Reserve Fund as attorney's fees ($5,000.00), to be paid out on a pro rata basis when payments are made from the Reserve Fund.[15] An award of one-third "is a normal fee amount in a wage and hour case." *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019); *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement.").

"In general, there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220, at *13–14 (W.D. Tenn. July 2, 2020) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique circumstances of

---

[15] *See* Exhibit 1, at 4.C.iv.b.

class actions in general, and of the unique circumstances of the actual cases before them.'" *Id.* (quoting *Rawlings*, 9 F.3d at 516).

### 5.1. The Court should adopt the percentage-of-the-fund approach.

The Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *Van Horn*, 436 F. App'x at 498. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action." *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, *16 (S.D. Ohio Nov. 5, 2020). When the resolution of a case creates a common benefit fund for the class, it is appropriate to assess attorney's fees against the fund. *Hosp. Auth. of Metro. Gov't v. Momenta Pharm., Inc.*, No. 3:15-cv-01100, 2020 U.S. Dist. LEXIS 99546, at *2 (M.D. Tenn. May 29, 2020) [hereinafter *Hospital Authority*] (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The "percentage-of-the-fund approach" is the "preferred method where, as here, 'a substantial common fund has been established for the benefit of class members through the efforts of class counsel.'" *Hospital Authority*, 2020 U.S. Dist. LEXIS 99546, at *2–3 (citing *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163, at *7 (E.D. Tenn. May 17, 2013)); *Fitzgerald*, 2020 U.S. Dist. LEXIS 117220, at *27 ("The 'percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a "common fund").'").

Further, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases" because "it best reflects the FLSA's employee-protection objective" *Dewald*, 2021 U.S. Dist. LEXIS 32459, at *16 ("Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method").

"[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) [hereinafter *Cardinal Health*]. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead rewards counsel for success and penalizes it for failure.'" *Id.*

Plaintiffs ask the Court to adopt the percentage-of-the-fund approach and award Plaintiffs' Counsel one-third of the Collective Fund and one-third of the Reserve Fund in attorney's fees. An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *14–15; *see also Fitzgerald*, 2020 U.S. Dist. LEXIS 117220, at *27 (collecting cases in Sixth Circuit courts approving attorney's fee awards in common fund cases ranging from 30% to 33.33% of the total fund); *Sweetwater Valley Farm, Inc. v. Dean Foods Co.*, 2018 U.S. Dist. LEXIS 131855, at *15 (E.D. Tenn. July 11, 2018) (noting that a 33.33 percent attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit").

### 6.5.    The *Ramey* Factors

Courts also analyze the six *Ramey* factors to ensure the attorney's fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *In re Regions Morgan Keegan Secs*, No. 2:09-2009 SMH V, 2013 U.S. Dist. LEXIS 205822, at *24 (W.D. Tenn. Sep. 5, 2013) (citing *Ramey*); *Jones v. Elite Emergency Servs.*

*LLC*, No. 3:12-cv-00203, 2019 U.S. Dist. LEXIS 75423, at *5 (M.D. Tenn. May 2, 2019) (citing *Ramey* as well). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 U.S. Dist. LEXIS 139769, at *7 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *Cardinal Health*, 528 F. Supp. 2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

**The value of the benefits rendered to the class.** The settlement results in a substantial benefit to Plaintiffs. As described above, this is a case that might well result in a worse result for Plaintiffs if litigation continued. This is for a variety of reasons, including the factual and legal issues in the litigation itself and the likelihood of collecting a judgment.

As it stands, Plaintiffs recovered approximately 60% of their unpaid wages, before accounting for attorney's fees and costs, as calculated[16] by Plaintiffs (which Defendants dispute as an accurate reflection of the potential unpaid wages, if any). This is an excellent result considering this case's circumstances. *Compare Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *with Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *with Dillworth v. Case Farms Processing Inc.,* 2010 U.S. Dist. LEXIS

---

[16] Plaintiffs calculated $306,752.56 in total unpaid waged based on the data provided by Defendants. (185,000 ÷ 306,752.56 = .60309).

20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of 30% of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). Further, the Plaintiffs are obtaining their recovery much faster than normal and with lower attorney's fees and costs. Therefore, this factor supports the requested fee award.

**Society's stake in rewarding attorneys, maintaining an incentive to others.** There is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *17–18. "Society benefits by encouraging counsel to take on difficult collective actions." *Baker v. ABC Phones of N.C.*, No. 19-cv-02378-SHM-tmp, 2021 U.S. Dist. LEXIS 208344, at *16 (W.D. Tenn. Oct. 28, 2021); *Fitzgerald*, 2020 U.S. Dist. LEXIS 117220, at *28 (same). "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *18. This factor supports the requested fee award.

**Whether the services were undertaken on a contingent fee basis.** Plaintiffs' Counsel's services were provided on a contingency fee basis. *See* Doc. 26-1 PageID 85, 87; Ex. 2 at ¶ 12. This factor supports the requested fee award.

**The value of the services on an hourly basis.** Performing a lodestar cross-check shows further support for the requested attorney's fees award. Courts in this district consider the lodestar when evaluating fee requests. *Stewart v. Complete Home Care Servs. of Tn*, No. 1:19-cv-00082, 2021 U.S. Dist. LEXIS 133882, at *20–21 (M.D. Tenn. July 19, 2021). Courts also "must look to other considerations that may lead to an upward or downward adjustment" and "the most critical factor of which is the degree of success obtained." *Id.* (quoting *Hensley*, 461 U.S. at 434). Plaintiffs'

Counsel have worked 177.82 hours on this case thus far, for a lodestar $59,952.00. Plaintiffs' Counsel's hours and rates are listed in the below chart, taken from Plaintiffs' Counsel's contemporaneous time records:

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| Erica Blankenship | $350 | 43.7 | $15,295.00 |
| Andrew Biller | $600 | 15.80 | $9,480.00 |
| Riley Kane | $250 | 78.9 | $19,725.00 |
| Andrew Kimble | $550 | 18.45 | $10,147.00 |
| Philip Krzeski | $350 | 0.4 | $140.00 |
| BK Paralegal | $150 | 9.67 | $1,465.00 |
| BK Law Clerk | $85 | 1.2 | $102.00 |
| Joshua A. Frank | $350 | 1.4 | $490.00 |
| David W. Garrison | $495 | 5.4 | $2,673.00 |
| BJMG Paralegal | $150 | 2.9 | $435.00 |
| **Totals** | | **177.82** | **$59,952.00** |

If it would assist the Court, Plaintiffs' Counsel can make their time records available for review, but because Plaintiffs' Counsel is not requesting abnormal fees, that review will likely be more burdensome than beneficial for both Plaintiffs' Counsel and the Court. *See Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021) ("In determining fee awards, courts should not 'become green-eyeshade accountants[,]' but instead must content themselves with 'rough justice[.]'").

Plaintiffs' Counsel's hourly rates have been approved as reasonable in numerous cases.[17] *See McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19 (approving hourly rates for Andy Biller at $600 per hour; Andrew Kimble at $550 per hour; Phil Krzeski at $350 per hour; and Erica Blankenship for $350 per hour); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *17; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19.

---

[17] Attorney Riley Kane's rate has not yet been approved.

Plaintiffs' Counsel's work will continue after approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19. This further supports a lodestar cross-check in this case.

In addition to the hours Plaintiffs' Counsel has worked on this pizza delivery driver case, Biller & Kimble, LLC has worked many thousands of hours on pizza delivery driver cases throughout the country. Plaintiffs' Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, 2019 U.S. Dist. LEXIS 11019 at *5 (S.D. Ohio Jan. 18, 2019); *see also Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *6 (discussing Biller & Kimble's expertise in this area). These hours "directly benefited the class in this case." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *20. "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees." *Id.* at *21. "It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues." *Id.* Here, Plaintiffs' Counsel's expertise in this niche area enhanced their representation here.

The lodestar multiplier in this case is 1.028,[18] which is well within the range of a reasonable fee award for this type of case, especially given the exceptional recovery. "In wage and hour collective and class actions, lodestar multipliers between 1 and 3 are common." *Fitzgerald*, 2020 U.S. Dist. LEXIS 117220, at *28–29 (citing cases approving multipliers of 2.5 and 2.75); *Baker*,

---

[18] 61,666.67 ÷ 59,952 = 1.028.

2021 U.S. Dist. LEXIS 208344, at *14–15 (same);[19] *see also Hospital Authority*, 2020 U.S. Dist. LEXIS 99546, at *4–5 (finding in an antitrust case that a multiplier of 3.12 falls within an acceptable range, and collecting cases approving multipliers from 1.3 to 6); *Sweetwater Valley Farm*, 2018 U.S. Dist. LEXIS 131855, at *18 (citing Newberg on Class Action § 14.6 (4th ed. 2009)) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."). "[G]iven the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20. "This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate." *Id.*

**The complexity of the litigation.** As discussed throughout this Motion, wage and hour collective actions are "inherently complex." *Arledge,* 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval of the requested fee award. This case involved novel and complex issues of law that have been hotly contested throughout the country.

**The professional skill and standing of counsel.** Both Plaintiffs and Defendants are represented by skilled and experienced counsel. As noted above, Plaintiffs' Counsel has substantial experience in pizza delivery driver litigation. Defendants' Counsel, Fisher & Phillips LLP also has

---

[19] In support of the proposition, "In wage and hour collective and class actions, lodestar multipliers between 1 and 3 are common," *Baker* cites additional FLSA cases, including: *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *14 (finding "the proposed fee award is approximately 2.57 times the lodestar. The Court finds that this is well within the acceptable range of multipliers for cases such as this."); *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *22 (S.D. Ohio Dec. 22, 2015) (finding "a lodestar multiplier of approximately 2.5…. is typical of lodestar multipliers in similar cases").

substantial experience in pizza delivery driver litigation, representing numerous employers on this issue in cases throughout the country. This factor supports the requested fee award.

Since all the *Ramey* factors support the requested fee award, Plaintiffs request the Court award Plaintiffs' Counsel one-third of the Collective Fund as attorney's fees. For the same reasons, Plaintiffs also requests that the Court award Plaintiffs' Counsel up to one-third of the Reserve Fund.

### 5.2. Plaintiffs' Counsel's request for reimbursement of advanced litigation expenses and the administration expenses should be approved.

Plaintiffs' Counsel also seeks reimbursement of advanced litigation expenses and administration costs. In this case, Plaintiffs' Counsel has incurred a total of $9,494.54 in litigation costs and expenses, which Plaintiffs' Counsel advanced.[20] The expenses include court fees, mediation expenses, the cost of sending notice, and the costs associated with service of process. Plaintiffs' Counsel also asks that the Court award the costs and fees associated with claims administration, which is $6,586.49.

### 6. The incentive payment is reasonable, and similar payments are routinely awarded.

Named Plaintiff Alvin Hawkins requests a $7,500 incentive/service award. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed.

---

[20] The expenses are detailed and itemized in Attorney Biller's declaration. *See* Exhibit 2 at ¶ 17.

A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply here.

Alvin Hawkins' requested service award is "similar to other collective and class action incentive awards approved by courts in this Circuit." *Fitzgerald*, 2020 U.S. Dist. LEXIS 117220, at *30 (approving a $7,500 service award and collecting cases approving awards between $7,500 and $10,000); *see also Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving $10,000 service awards in pizza delivery driver cases).

### 7. Conclusion

Plaintiffs ask the Court to enter an Order: (1) granting approval of the settlement; (2) approving Plaintiffs' Counsel's request for attorney's fees and costs; (3) approving Plaintiff Alvin Hawkins' requested service award; and (4) dismissing this case with prejudice.

Finally, to facilitate administering and completing the settlement process, Plaintiffs ask that the Court retain jurisdiction to enforce and interpret the settlement.

Respectfully submitted,

*/s/ Riley E. Kane*
Andrew R. Biller (*pro hac vice*)
Andrew P. Kimble (*pro hac vice*)
Riley E. Kane (*pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711

Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

and

David W. Garrison (TN Bar No. 024968)
Joshua A. Frank (TN Bar No. 033294)
Barrett Johnston Martin & Garrison,
LLC
Phillips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
*dgarrison@barrettjohnston.com*
*jfrank@barrettjohnston.com*

*Counsel for Plaintiff and the FLSA collective*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

_/s/ Riley Kane_
Riley E. Kane