# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALVIN HAWKINS, on behalf of himself and all others similarly situated,** | ) ) ) ) | **Case No. 3:21-cv-00266** |
| Plaintiff, | ) ) | **Chief Judge Crenshaw** |
| **v.** | ) ) | **Magistrate Judge Holmes** |
| **MIDDLE TENNESSEE PIZZA, INC.; PATRICIA HOUSEMAN; DOE CORPORATION 1-10; JOHN DOE 1-10,** | ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) | |

---

## SETTLEMENT AGREEMENT AND RELEASE

---

This Settlement Agreement and Release (the "Agreement" or the "Settlement") is entered into by and between Plaintiff Alvin Hawkins ("Plaintiff" or "Named Plaintiff")"), individually and on behalf of all similarly-situated individuals identified in Section 1(B) below (the "Collective Members") and, on the other hand, Middle Tennessee Pizza, Inc. and Patricia Houseman (collectively "Defendants"). Defendants and Plaintiff will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

   A. On March 31, 2021, Plaintiff initiated the lawsuit *Alvin Hawkins, on behalf of himself and those similarly situated v. Middle Tennessee Pizza, Inc. et al.* (the "Lawsuit"), which is currently pending in the United States District Court, Middle District of Tennessee (the "Court"), civil action number 3:21-cv-00266.

   B. The Parties seek to resolve all claims raised in the Lawsuit. For purposes of this Agreement, the Parties have agreed to the following settlement collective:

   > All current and former Delivery Drivers employed by Middle Tennessee Pizza, Inc. from May 10, 2018 to November 3, 2021 who filed a Consent to Join form in this Lawsuit prior to November 3, 2021.

1

C. Defendants deny Plaintiff's allegations in the Lawsuit and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

D. The purpose of this Agreement is to conclusively and finally resolve all of the Plaintiff's and the Collective Members' claims and the claims of any Late Claimants who choose to make a claim against the Reserve Fund against Defendants that were raised or arise out of the facts alleged as part of the Lawsuit and occurred during the Release Period.

E. The Parties agree and understand that this Agreement is part of a collective settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void and the Parties revert to *status quo ante* as more fully described in Section 8 below.

F. The statute of limitations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, shall continue to run for Delivery Drivers who did not opt-in to the Lawsuit.

**2. Opportunity to Negotiate, Consider, and Consult with Counsel**

A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties. The negotiations included a full-day private mediation with former Magistrate Judge for the United States District Court for the Eastern District of Virginia, F. Bradford Stillman, Esquire (the "Mediator") on November 3, 2021 via video conference.

B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not received or been made any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

C. The Parties acknowledge that they have been represented by competent counsel throughout the negotiation of this Agreement and the Lawsuit.

**3. Definitions**

The terms set forth herein shall have the meanings ascribed to them below:

"**Collective Members**" mean all current and former Delivery Drivers employed by Middle Tennessee Pizza, Inc. during the Release Period who filed a Consent to Join form in this Lawsuit prior to November 3, 2021, including Plaintiff.

"**Release Period**" means the period from May 10, 2018 through November 3, 2021.

2

"**Claims Administrator**" or "**Administrator**" means CAC Services Group, LLC.

"**Collective Fund**" means the $185,000 allocated to resolve the claims asserted by the Collective Members, including claims for attorneys' fees, costs, expenses, service awards, and claims administration costs.

"**Net Collective Fund**" means the net amount of the Collective Fund for distribution to the Collective Members after accounting for payment of court-approved attorneys' fees, costs, expenses, service awards, and claims administration costs attributable to the Collective Fund.

"**Complaint(s)**" means the Complaint in the Lawsuit on March 31, 2021 and any amended complaints filed thereafter.

"**Reserve Fund**" means the $15,000 Reserve Fund allocated to resolve the claims asserted by Late Claimants, including claims for attorneys' fees, costs, expenses, service awards, and claims administration costs. The Reserve Fund will be controlled by the Claims Administrator subject to the terms of this Agreement, the Court's Orders for Final Approval, applicable law and any customary agreement entered into by the Parties through their counsel.

"**Net Reserve Fund**" means the net amount of the Reserve Fund for distribution to the Late Claimants and to Collective Counsel after accounting for payment of court-approved costs, expenses, service awards, and claims administration costs attributable to the Reserve Fund. Unlike the Net Collective Fund, the Net Reserve Fund contains attorneys' fees because the attorneys' fees attributable to the Reserve Fund will not be distributed unless and until a Late Claimant makes a claim against the Reserve Fund.

"**Defendants**" means Middle Tennessee Pizza, Inc. and Patricia Houseman.

"**Defendants' Counsel**" means Fisher & Phillips LLP.

"**Eligible Reserve Fund Participant(s)**" means any Delivery Driver employed by Defendants during the Release Period who did not return a consent to join form before November 3, 2021 and therefore did not or will not receive a payment from the Collective Fund.

"**Final**" means that the Court has granted a Final Approval Order and either: (a) the applicable date for seeking appellate review of the Final Approval Order has passed without a timely appeal; (b) an appellate court has rendered a final decision or judgment affirming the Court's Final Approval Order without material modification, and the time for any further appeal has expired; or (c) any timely appeal has been dismissed.

"**Late Claimant**" means any current and former Delivery Drivers employed by Defendants during the Release Period who makes a claim against the Reserve Fund.

"**Lawsuit**" means *Alvin Hawkins, on behalf of himself and those similarly situated v. Middle Tennessee Pizza, Inc.* (the "Lawsuit"), which is currently pending in the United States District Court, Middle District of Tennessee (the "Court"), civil action number 3:21-cv-00266.

"**Miles Driven**" means the amount of miles driven, as determined by Defendants' business records, by relevant Delivery Drivers from the date three years before the Delivery Driver filed their Consent to Join Form or submitted a claim against the Reserve Fund until November 3, 2021.

"**Named Plaintiff**" or "**Plaintiff**" means Alvin Hawkins, and includes any and all of his representatives, heirs, administrators, executors, beneficiaries, agents, attorneys, and assigns, as applicable and without limitation.

"**Opt-In Collective Member**" means each Collective Member and Late Claimant, including Named Plaintiff, and includes any and all of his/her/their representatives, heirs, successors, administrators, executors, beneficiaries, agents, attorneys, and assigns, as applicable and without limitation.

"**Parties**" means the Named Plaintiff, the Collective Members, and Defendants.

"**Plaintiff's Counsel**" or "**Collective Counsel**" means Biller & Kimble, LLC and Barrett Johnston Martin & Garrison, LLC.

"**Final Approval Order**" means the entry of the Order by the Court granting approval of the Settlement.

"**Qualified Settlement Fund**" or "**QSF**" means the account established by the Claims Administrator into which Defendants will deposit the portion of the Settlement Amount necessary to pay: (1) the Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Plaintiff's Counsel; (3) Court-approved Service Awards as specified herein and approved by the Court; (4) the claims of all Collective Members; and (5) the Reserve Fund. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement, the Court's Orders for Final Approval, applicable law and any customary agreement entered into by the Parties through their counsel.

"**Released Parties**" means Middle Tennessee Pizza, Inc., Patricia Houseman, and any related entities, along with all respective owners, members, stockholders, franchisors, including Domino's Pizza, LLC (and its related entities), predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

"**Settlement**" means the settlement of the Lawsuit pursuant to the terms of this Agreement.

"**Settlement Amount**" means the sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00), which Defendants have agreed to pay to fully and finally resolve the Lawsuit and claims of the Plaintiff, the Collective Members, and any Late Claimants, subject to the terms herein and to Court approval. The Settlement Amount shall be payable fourteen (14) days after the Final Approval Order becomes Final.

### 4. Settlement and Disbursement

**A.** To settle the Lawsuit, and in consideration of the release of claims and dismissal of the Lawsuit against Defendants with prejudice, Defendants' total aggregate payments under this Settlement shall under no circumstances exceed the Settlement Amount, or Two Hundred Thousand and 00/100 Dollars ($200,000.00). The Total Settlement Amount will be split into two funds: $185,000 will be allocated to the claims of the Collective Members, and $15,000 will be allocated to the claims of Late Claimants who decide to participate in the Settlement after the Court has approved it. The Settlement Amount accounts for all payments to settle the claims asserted in the Lawsuit by Plaintiff and Opt-In Plaintiffs, as well as any claims asserted by Late Claimants, including all expense reimbursements, unpaid wages, improper deductions and withholdings, tip credit and tip credit notice violations, liquidated damages, interest, attorney's fees, expenses, taxes, claims administration fees, and service awards as set forth in the Release (Section 6), up to and including the end of the Release Period. The Settlement Amount shall be payable within fourteen (14) days after the Final Approval Order becomes Final (assuming no appeals are pursued, this will be 45 days after the Final Approval Order).

**B.** <u>Retention and Payment of Claims Administrator</u>. The Parties will retain the Claims Administrator to establish and maintain the QSF and disburse the settlement payments described herein. Prior to mailing checks to the Collective Members, the Claims Administrator will run all names, addresses, and/or social security numbers through the National Change of Address Database to update any addresses. The Claims Administrator will be further responsible for responding to Collective Member and Late Claimant inquiries; resolving disputes relating to individual Collective Members' and Late Claimants' individual settlement payments not resolved by Counsel; reporting on the state of the settlement to the Parties; distributing the Service Award; calculating the Collective Members' and Late Claimants' individual settlement payments in accordance with the Settlement and the Court's Final Approval Order; calculating the payments for Collective Members and Late Claimants who file claims against the Reserve Fund; distributing Settlement Checks to individual Collective Members and Late Claimants; preparing and filing all required tax documentation; preparing a declaration regarding its due diligence in the claims administration process; providing counsel with any information related to the administration of the Settlement upon request; administering the Reserve Fund and distributing any proceeds remaining in accordance with the Final Approval Order; and performing such other duties as the Parties may jointly direct or as are specified herein. The Claims Administrator will also be responsible for locating Collective Members and Late Claimants whose checks may be returned undeliverable by taking reasonable steps to

find updated contact information, including but not limited to contacting the Collective Member or Late Claimant by telephone or email.

**i.** All fees and costs of the Claims Administrator shall be deducted from and paid out of the Settlement Amount. The Claims Administrator's fees and costs will be deducted from the Collective Fund and the Reserve Fund on a prorated basis.

**ii.** The Claims Administrator will provide regular reports to the Parties regarding the status of the Settlement administration process, the substance and status of disputes (if any) raised by Collective Members and Late Claimants regarding the calculation of settlement amounts, distribution of the individual settlement checks, and administration of the QSF, Collective Fund, and Reserve Fund.

**iii.** In the event of a dispute regarding an individual Collective Member's or Late Claimant's settlement payment, the Claims Administrator shall promptly report the nature of the dispute to Plaintiff's Counsel and Defendants' Counsel, who will confer in good faith with the Claims Administrator in an effort to resolve the dispute. In the event that Plaintiff's Counsel and Defendants' Counsel are unable to reach an agreement, they shall present the issue to the Claims Administrator who shall decide the dispute and whose decision shall be final and binding on the Parties.

**iv.** The Parties and Counsel agree to cooperate with the Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the individual Opt-In Collective Members' settlement payments, and assist the Claims Administrator in locating Collective Members and/or Late Claimants. This includes that within fourteen (14) days of the Court's entry of a Final Approval Order: Defendants will transmit to the Administrator and to Collective Counsel the miles driven by each Collective Member during the Release Period and each Collective Member's social security number; and Collective Counsel, to the extent available, will transmit to the Administrator and Defendants' Counsel the last known mailing addresses, last known email addresses, and last known phone numbers of the Collective Members. Within ten (10) days of being notified of a claim by any Late Claimant, the parties will also provide the above information as to such Late Claimant(s), as applicable, and Defendants will provide all miles driven by such Late Claimant(s) during the release period.

**C.** The Settlement Amount shall be divided into two funds to pay claims as follows:

**i.** The QSF will be funded with $200,000. $185,000 is to be allocated to the claims of the Collective Members (the "Collective Fund") and $15,000 is to be allocated to the claims of potential Late Claimants (the "Reserve Fund").

**ii.** First, any amounts allocated for Claims Administrator fees or costs, and any court-approved advanced litigation costs, incentive awards, and attorneys' fees will be deducted from the Settlement Amount on a pro rata basis between the two funds. Since the Collective Fund makes up 92.5% of the Settlement Amount, 92.5% of the Claims Administrator fees or costs, and any court-approved advanced litigation

6

costs, incentive awards, and attorneys' fees will be deducted from the Collective Fund. Because the Reserve Fund makes up 7.5% of the Settlement Amount, 7.5% of the Claims Administrator fees or costs, and any court-approved advanced litigation costs, incentive awards, and attorneys' fees will be deducted will be deducted from the Reserve Fund.

    **a)** The Claims Administrator fees or costs, and any court-approved advanced litigation costs, and incentive awards attributable to both the Collective Fund and the Reserve Fund will be paid out from the two funds at the same time as the Collective Members receive their award amounts, 14 days after the Settlement becomes Final (i.e., at the same time that the Collective Members receive their individual award amounts).

    **b)** The court-approved attorneys' fees attributable to the Collective Fund will also be paid out within 14 days after the Settlement becomes Final.

    **c)** The court-approved attorneys' fees attributable to the Reserve Fund will be paid out at the same time as and in proportion to any payments made to Late Claimants from the Reserve Fund (e.g., if a Late Claimant entitled to 10% of the Reserve Fund is paid from the Reserve Fund on June 1, 2023, Class Counsel will receive 10% of the attorneys' fees awarded by the Court from the Reserve Fund on the same date).

**iii.** The Net Collective Fund will be distributed to the Collective Members as follows:

    **a)** Each Collective Member's check will be equal to the Collective Member's prorated share of the Collective Fund based on the miles driven by each Collective Member during the Release Period, divided by the total miles driven by all Collective Members during the Release Period, with a minimum payment of $50.00.

    **b)** Within 14 days of the Final Approval Order of the Court becoming Final, the Administrator will issue a check to each Collective Member according to the above formula.

    **c)** Checks from the FLSA Collective Fund may be cashed or negotiated within 180 days of being issued. After 180 days, the check will be void. The face of each check will contain the following language: "Void after 180 days."

    **d)** Opt-In Plaintiffs may request that the Administrator void and reissue checks and the Administrator shall void and reissue said checks within 7 days after notifying Collective and Defendants' Counsel, unless a dispute arises. Opt-In Plaintiffs who have requested that their checks be voided and reissued shall bear any increased claims administration fees or fees incurred (e.g., bank stop payment orders).

7

**e)** The Claims Administrator will hold any uncashed amounts from the Collective Fund in the QSF until November 3, 2024. Until November 3, 2024, Collective Members may request that the Administrator reissue stale checks (i.e., checks that were not cashed within 180 days) and the Administrator shall reissue said checks 7 business days after Notice to Collective Counsel and Defendants' Counsel unless a dispute arises.

**f)** If any unclaimed funds remain as of November 3, 2024, those funds will be distributed to Middle Tennessee Pizza, Inc. within 7 business days, except for funds related to the re-issuance of any check to a Collective Member, which shall be held for 180 days after the re-issuance of the check, and any uncashed amount to be distributed to Middle Tennessee Pizza, Inc. within 7 business days thereafter.

**iv.** The Net Reserve Fund shall be established and maintained until November 3, 2024 so that Eligible Reserve Fund Participants can claim a share of it if they so choose.

**a)** Eligible Reserve Fund Participants have the option to, but are not required to, participate in the Reserve Fund as Late Claimants. Late Claimants who elect to participate in the Reserve Fund will receive payment in an amount equal to the Late Claimant's potential prorated share of the Collective Fund had the Late Claimant filed a timely consent to join, but proportionally reduced by that amount time-barred by the statute of limitations, as set forth herein; provided, however, that the claim is not barred by the statute of limitations at the time it is submitted to the Administrator.

**b)** When the Administrator issues a check to a Late Claimant, the Administrator shall also issue a check to Plaintiff's Counsel from the Reserve Fund. The attorneys' fees will be calculated by determining the Late Claimant's pro rata share of the Reserve Fund and applying that percentage share to the attorneys' fees award by the Court from the Reserve Fund.

**c)** Eligible Reserve Fund Participants may make a request or claim against the Reserve Fund via email, U.S. mail, or through Collective Counsel by providing their name and social security number (or if social security number is not available, such other form of identification as reasonably requested by the Administrator or Defendants to confirm identity). The Administrator and Defendants (or their counsel) may request additional identifying information reasonably necessary to confirm the identity of the Late Claimant and status as an Eligible Reserve Fund Participant.

**d)** To the extent that there is a dispute regarding any part of this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal resolution is unsuccessful, the Parties request the assistance of the

8

Claims Administrator, or if the Claims Administrator cannot resolve the dispute, the Parties shall submit the dispute to the Court for assistance in reaching resolution.

e) Any unclaimed amounts in the Reserve Fund as of November 3, 2024 will be distributed to Middle Tennessee Pizza, Inc. within 7 business days, except that the Administrator will hold any funds related to any re-issued checks for 180 days after the check was issued, then distribute any remaining amounts to Middle Tennessee Pizza, Inc. within 7 business days thereafter.

v. Each check paid to a Collective Member or Late Claimant will be treated as expense reimbursement up to the IRS rate, which shall be the then-in-effect IRS rate, or as required by law. Any amounts paid above that will represent liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to Collective Members and Late Claimants for monies paid as liquidated damages.

**D.** The Parties are responsible for ensuring their own proper tax treatment of the payments. In addition to the Settlement Fund, Defendants will be responsible for their own portion of employer taxes (e.g., FICA, FUTA, unemployment insurance), if any, arising from this Agreement. The Parties also agree and understand any payments under this Agreement are not intended to, and will not form the basis for, nor shall they be considered wages for calculating, or re-calculating, additional contributions to, or benefits under, any benefit or compensation plans maintained by the Defendants for the benefit of their employees and their employees' beneficiaries. Opt-In Collective Members will be responsible for their individual payroll taxes, if any, that are normally withheld from their wages. Those amounts, if any, will be withheld by the Claims Administrator and remitted by the Claims Administrator to the proper taxing authorities.

**E.** The Court shall retain continuing jurisdiction over the Settlement. In the event that Plaintiff, Collective Counsel, and/or Opt-In Collective Members believes he/she/they must petition the Court with regard to an alleged breach by Defendants' failure to make one or more payments as outlined above, Plaintiff and Opt-In Collective Members shall notify Defendants' Counsel of the issue. Defendants will then have fourteen (14) days to cure the failure or issue. The Parties may agree to extend this 14-day cure period, if reasonably warranted under the particular circumstances. If Defendants do not cure the failure or issue, Plaintiff, Collective Counsel, and/or Opt-In Collective Members can request from the Court an entry of judgment against Defendants jointly and severally for the amount suffered as a result of the alleged breach of the Settlement Agreement (including corresponding approved attorneys' fees) plus applicable interest. Further, in the event they prevail, Plaintiff, Collective Counsel, and/or the Opt-In Collective Members will be entitled to recover reasonable attorneys' fees and costs associated with obtaining such a judgment and its enforcement as approved the Court. In the event that such a motion is unsuccessful and deemed frivolous, Defendants may seek reasonable attorney's fees incurred in defense of such a motion.

9

In the event that Plaintiff, Class Counsel, Class Members, Defendants or Defendants' Counsel believe that she/they must petition the Court to enforce, implement, or interpret this Agreement (except with regard to failure to pay described above), said party or counsel shall provide notice to opposing counsel of the issue. The Parties will then have fourteen (14) days to address the issue prior to engaging the Court. The Parties may agree to extend this 14-day period, if reasonably warranted under the particular circumstances.

**F.** All payments set forth in this Section 4 are subject to Court approval of the Settlement.

5. **Attorneys' Fees, Service Award, Settlement Administration, and Expenses**

**A.** Defendants agree not to object to an award of attorneys' fees, costs, and service award equal to or less than the following amounts:

    i. Subject to Court approval, Class Counsel will receive up to one-third (1/3) of the Collective Fund, or $61,666.67, as attorneys' fees. 92.5% of the total amount of attorneys' fees awarded by the Court, attributable to the Collective Fund, will be payable fourteen (14) days after the Final Approval Order has become Final. The remaining attorneys' fees awarded by the Court, attributable to the Reserve Fund, will be payable at the same time as any payments made to Late Claimants, as detailed above.

    ii. Subject to Court approval, reimbursement of advanced litigation expenses incurred by Collective Counsel in this matter. These amounts will be deducted from the Collective Fund and the Reserve Fund on a pro rata basis, and will be payable within 14 days of the Settlement becoming Final.

    iii. Subject to Court approval, and in addition, reasonable costs related to the claims administration costs for a Claims Administrator retained by the Parties. These amounts will be deducted from the Collective Fund and the Reserve Fund on a pro rata basis, and will be payable within 14 days of the Settlement becoming Final.

    iv. Subject to Court approval, a service award in the aggregate amount of Seven Thousand Five Hundred and 00/100 Dollars ($7,500) to Named Plaintiff. In exchange for Defendants' non-opposition to the individual service award, Named Plaintiff agrees to execute a separate settlement agreement containing a general release of claims, attached as Exhibit 1. This amount will be deducted from the Collective Fund and the Reserve Fund on a pro rata basis, and will be payable within 14 days of the Settlement becoming Final.

**B.** This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amounts of attorneys' fees costs, or service awards or reduces any of those amounts, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Collective Counsel retain their right to appeal any decision by the Court regarding the attorneys' fees and costs and such appeal will not be deemed an appeal of

this Agreement or the Settlement, and any payments to be made under the Settlement will be stayed pending the appellate review until the Settlement is Final. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Class Counsel's application for attorneys' fees and costs. The amounts attributable to any such reduction shall be held in the Reserve Fund and subject to the terms of this agreement with regard to the Reserve Fund.

.

**C.** The Parties will retain a Claims Administrator and will seek approval of claims administration costs in an amount to be deducted from the Settlement Fund.

## 6. Release

**A.** The term "Released Parties" includes Middle Tennessee Pizza, Inc. and Patricia Houseman and any related entities, along with all respective owners, members, stockholders, franchisors, including Domino's Pizza, LLC (and its related entities), predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

**B.** Each Opt-In Collective Member who cashes or negotiates a settlement check releases all wage and hour claims against the Released Parties accrued from three (3) years prior to the date the Opt-In Collective Member filed a Consent to Join form in this Lawsuit (or from the date when one was filed on his or her behalf), or made a claim to receive money from the Reserve Fund, through November 3, 2021, arising out of the facts asserted in the Lawsuit, including claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), taxes (if applicable), service awards, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the wage and hour laws of Tennessee, and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

**C.** The back of each settlement check issued to any Late Claimant will contain the following release:

> By cashing or negotiating this check, I have agreed to join the lawsuit *Alvin Hawkins v. Middle Tennessee Pizza, Inc., et al.*, Case No. 3:21-cv-00266 (Middle District of Tennessee) (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and

11

unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit or arising out of the facts asserted in the Lawsuit, which accrued at any time between three (3) years prior to the date the Late Claimant claimed from the Reserve Fund to the date I claimed from the Reserve Fund, including claims arising out of the facts asserted in the Lawsuit, claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), taxes (if applicable), service awards, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the wage and hour laws of Tennessee, and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit. If required by the Court, I acknowledge that a copy of this check can be filed as my consent to become a party to this Lawsuit and by bound by the Settlement and Release Agreement in the Lawsuit.

**D.** The Parties recognize and agree the terms of this Settlement and the scope of the release are intended to provide for complete *res judicata* and *collateral estoppel* effect for any claims by or on behalf of Opt-In Collective Members encompassed by the release set forth in Paragraph 6 of this Agreement.

**E.** If the Court requires Late Claimants' checks to be filed as a condition of participating in this Settlement and joining the action as a party plaintiff under 29 U.S.C. 216(b), then Defendants must file with the Court a copy the cancelled checks.

## 7. Administration Procedure and Timeline

Subject to Court approval, the Parties agree to the following timeline for the completion of the settlement process and dismissal of the Action:

**A.** <u>Motion for Settlement Approval:</u> Plaintiff will draft a Motion for Settlement Approval. Plaintiff will provide Defendants' Counsel with a copy of the Motion (including any supporting brief) and proposed Order, as further detailed below, prior to filing. Defendants will have fourteen (14) days to provide comments and suggested edits to the Motion. Plaintiff will not unreasonably reject Defendants' proposed edits, corrections, and comments. As soon as practicable after the conclusion of the 14-day commenting period, Plaintiff will file the Motion for Settlement Approval. Notwithstanding the foregoing,

neither party waives any rights they may have to seek judicial intervention to resolve any disagreements related to the Motion for Settlement Approval.

**B.** <u>Production of Collective Data</u>: Within fourteen (14) days of the Court's Final Approval Order, Defendants will transmit to the Administrator and to Collective Counsel the miles driven by each Collective Member and each Collective Member's social security number; and Collective Counsel, to the extent available, will transmit to the Administrator and Defendants' Counsel the last known mailing addresses, last known email addresses, and last known phone numbers of the Collective Members. Defendants and Plaintiff's Counsel shall provide additional information to the Claims Administrator to the extent reasonably requested in connection with administration of the settlement, including providing such similar information for any Late Claimant, as applicable and necessary, including Defendants providing all miles driven by such Late Claimant during the release period within ten (10) days of being notified of a claim by a Late Claimant. Within ten (10) days of being notified of a claim by any Late Claimant. The Parties acknowledge and agree that neither will use any such information for any purpose other than in connection with administration of the settlement, specifically including any advertisement or solicitation efforts, and shall only be used for purposes directly related to the effectuation of this Settlement.

**C.** <u>Payment Calculation for Collective Members:</u> Within seven (7) days of the Defendants' transmission of the above information, the Administrator will calculate amounts due to the Collective Members under the agreement and the Court's Order, and provide those calculations to Defendants' Counsel and Collective Counsel. Counsel will promptly provide the Administrator with any corrections or changes to those calculations.

**D.** <u>QSF Funding:</u> Within fourteen (14) days of the Administrator transmitting the above payment information, Defendants will transmit to the Administrator the Settlement Amount ($200,000).

**E.** <u>Payment:</u> Within ten (10) days of the Defendants transmitting the above payment, but no sooner than fourteen (14) days after the Final Approval Order has become Final, the Administrator will send to Collective Members and Collective Counsel the checks consisting of all amounts due under this Settlement Agreement relating to the Collective Members, the Court-approved service award, and Court-approved attorneys' fees and costs.

**F.** <u>Proposed Order of Dismissal with Prejudice:</u> Upon the filing of the Motion for Settlement Approval, the Parties will submit a proposed Order in a mutually agreeable form (i) approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; (ii) approving the Collective Counsel's motion for attorneys' fees and expenses; (iii) approving the Service Award to Plaintiff (iv) approving the Claims Administrator's fees and costs; and (v) dismissing this action with prejudice.

13

**G.** <u>Unclaimed Collective Funds to be held in the QSF</u>: The Claims Administrator shall hold all funds attributable to uncashed checks in the QSF in the Collective Fund until November 3, 2024.

**H.** <u>Reserve Fund Claim Period:</u> Until November 3, 2024, Eligible Reserve Fund Participants are permitted to make a claim for a portion of the Reserve Fund. The distribution of the Reserve Fund is described herein.

**I.** <u>Undeliverable Collective Member Checks:</u> If any checks are returned to the Administrator as undeliverable with a forwarding address, the Administrator will forward the payment to the forwarding address. If any checks are returned as undeliverable without a forwarding address, the Administrator will attempt to run the Collective Member's through a skip trace to attempt to obtain an updated address. If the Administrator is able to obtain an updated address, the Administrator will forward the payment to the updated address, otherwise said funds shall be held until November 3, 2024.

**8. Effect of Failure to Grant Approval:**

**A. <u>EFFECT OF FAILURE TO GRANT FINAL APPROVAL</u>**. The Agreement and payment of the Settlement Amount are contingent upon the Court's approval of the Settlement and this Agreement. In the event: (1) the Court fails to enter a Final Approval Order approving the Settlement (failure by the Court or an appellate court to award or sustain the full amount of the Service Award or Plaintiff's Counsel's attorneys' fees and expenses will not constitute failure to approve the Settlement or a material modification of the Settlement); and (2) a Party does not seek reconsideration or appellate review of the decision denying entry of the Judgment, the Parties will attempt in good faith to renegotiate the Settlement to resolve any deficiencies identified by the Court, and seek Court approval of the renegotiated settlement. If these good faith negotiations fail, then the Settlement and this Agreement will become null and void *ab initio*. In the event the Settlement and this Agreement become null and void:

  **i.** The Parties shall have no further rights or obligations under this Agreement or any Supplemental Settlement Agreements and the pleadings shall revert to *status quo ante* and Defendants shall maintain all rights and defenses including the right to contest certification.

  **ii.** The Lawsuit will proceed as if no settlement had ever been reached. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

  **iii.** The Parties will equally share payment of the fees and costs reasonably incurred to date by the Claims Administrator.

  **iv.** This Agreement (including Exhibits) will not be used for any purpose whatsoever, including use in any future Lawsuit, or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint.

**9. Other Terms**

**A.** By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiff, the Collective Members, or any potential Late Claimant, all such liability being expressly denied. Defendants deny and continue to deny the allegations in the Lawsuit and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for collective action treatment, other than for purposes of settlement.

**B.** The Parties agree that, by entering into and seeking Court approval of this Agreement, Defendants in no way waive any rights, if any, to enforce arbitration agreements entered into between Defendants and any Opt-In Collective Member, including the waiver of class and collective action litigation, or to enforce similar agreements with other employees.

**C.** Settlement of the Lawsuit and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, and shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, and shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and agree that they may not be used in any proceeding involving Defendants for any reason, except for enforcing the terms of this Agreement and/or by written consent of the opposing party.

**D.** The Parties agree to keep the fact and amount of the Settlement confidential until Plaintiff's public filing of the Motion for Settlement Approval, except that the Parties may advise the Court of the fact of the settlement, if required, and may communicate with Collective Members and Eligible Reserve Fund Participants about the Settlement. Defendants may make any necessary disclosures of settlement information for tax, regulatory, or other purposes as well as for purposes required by any contractual agreements. Nothing herein shall limit Collective Counsel's ability to practice law and advise clients.

**E.** No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

**F.** This Agreement including any exhibits constitute the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

15

**G.** This Settlement is binding upon and inures to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

**H.** This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance. To the extent the releases contained in the Agreement are held to be illegal, invalid, or unenforceable, the Parties shall proceed as follows:

    **i.** Defendants shall be relieved of their payment obligation and the Lawsuit will resume unless: (a) a Party seeks reconsideration or appellate review of the decision denying approval of settlement, or (b) the Parties attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

    **ii.** In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement. The Agreement shall be void and the Parties shall revert to their position *status quo ante* in accordance with Section 8 above

**I.** The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

**J.** Signature of Named Plaintiff. This Agreement is valid and binding if signed by Defendants' authorized representative and the Plaintiff. Named Plaintiff acknowledges that he has the authority to execute this Agreement on behalf of the applicable Opt-In Collective Members. Named Plaintiff agrees not to object to any of the terms of this Agreement. Non-compliance by Plaintiff with this Section shall be void and of no force or effect. Any request for exclusion or objection by Plaintiff shall be void and of no force or effect.

**K.** Tennessee law governs this Agreement's validity, construction, and enforceability. This Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing, interpreting, and enforcing the terms of the Agreement.

**L.** This Agreement may be executed by facsimile or electronically and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

16

**M.** The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

**N.** If any deadline under the Agreement falls on a Saturday, Sunday, or federal holiday, the Parties agree that the deadline will be deemed to be the next business day.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

_____          _____
Alvin Hawkins                                           Date
Individually and as Collective Representative for Plaintiff


_____          _____
On behalf of Middle Tennessee Pizza, Inc.              Date


_____          _____
Patricia Houseman, on behalf of herself                Date

# EXHIBIT 1

# SUPPLEMENTAL SETTLEMENT AGREEMENT AND RELEASE

This Supplemental Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff Alvin Hawkins ("Hawkins"), on the one hand, and Defendants Middle Tennessee Pizza, Inc. and Patricia Houseman ("Defendants")[1], on the other.

1. **Purpose:** This Supplemental Settlement Agreement and Release supplements and incorporates the Settlement and Release Agreement to be executed by the Parties and filed with the Court in the matter of *Alvin Hawkins v. Middle Tennessee Pizza, Inc., et al.*, identified as Case No. 3:21-cv-00266, and venued in the United States District Court for the Middle District of Tennessee ("Lawsuit"). The purpose of this Agreement is to fully and conclusively resolve and settle **all** matters and claims Hawkins could assert against Defendants and its current or former parents, franchisors, subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Hawkins may allege jointly employed him), and each and all of their current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them, including, but not limited to, any claims for relief that were made or could have been made by Hawkins in the Lawsuit. It is a further and equal purpose of this Agreement to resolve **any and all** disputes, controversies, or claims that Hawkins may have against Defendants and Released Parties, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

2. **Opportunity to Negotiate, Consider and Consult with Counsel:** The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed. In executing this Agreement, Hawkins has not relied on any representation, compromise, conduct or action made by or on behalf of Defendants or Defendants' attorneys. Hawkins acknowledges that he has obtained the advice of competent counsel regarding this Agreement and agrees that he has been given a reasonable period of time within which to consider this Agreement. Hawkins and Defendants confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

3. **No Admission of Liability:** The Parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendants expressly denies any such liability and conduct.

---

[1] The defined terms included in the Settlement and Release Agreement executed by the Parties are incorporated by reference herein.

**4.      Consideration:**  The consideration given to Hawkins under this Agreement and the Settlement and Release Agreement consists of payment to Hawkins in the amount of Seven Thousand Five Hundred and 00/100 Dollars ($7,500.00), identified as Hawkins' Service Award in the Settlement and Release Agreement, plus Hawkins' proportionate share of the Collective Fund as set forth in the Settlement and Release Agreement.  The consideration given by Hawkins to Defendants in support of this Agreement consists of full performance of each and every one of the respective obligations described in this document.

**5.      Release of Defendants and Released Parties:**  For and in consideration of the required acts and promises set forth in the text of this Agreement, Hawkins, for himself and his heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendants and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which Hawkins has or might have as a result of, or in any way connected with Hawkins' employment or separation of employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and State of Tennessee, the Tennessee Human Rights Act, the Tennessee Disability Act, the Tennessee Maternity Leave Act, the Tennessee Public Protection Act, and all other local, state or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, expense reimbursement, incentives, and/or other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C.§ 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Hawkins has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law.  By signing this Agreement, Hawkins promises, covenants and agrees, to the fullest extent permitted by law, that he will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or

liabilities which are released by this Agreement. Hawkins acknowledges and agrees that, except as expressly limited in this release, this Agreement releases and precludes any claims of which he is not now aware and of which he may only become aware at some later date. Nevertheless, Hawkins fully and freely intends to and does, by executing this Agreement, release any such claims. Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

6. **Acknowledgment of Receipt of All Payment Owed:** Hawkins agrees and acknowledges that he has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, reimbursements, liquidated damages and employee benefits to which Hawkins was and/or is entitled as a result of Hawkins' employment with Defendants, and specifically waives, releases and discharges any right or entitlement he may have to any further compensation or other payments from Defendants, except as set forth in this Agreement.

7. **Attorneys' Fees.** Subject only to the application for attorney's fees as set forth in the Settlement and Release Agreement in connection with the Action, Hawkins expressly acknowledges and agrees that he alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements he has incurred in connection with (i) his prior employment relationship with Defendants and the termination of that relationship, (ii) the claims he has asserted or alleged or could have asserted or alleged against Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendants has no responsibility or obligation whatsoever to pay any attorney's fees, costs or disbursements.

8. **Medicare Reporting Requirements.** The Parties have considered Medicare's interest in this matter, if any, and Hawkins declares and expressly warrants that he is not Medicare eligible nor within thirty (30) months of becoming Medicare eligible; is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security benefits for 24 months or longer; and has not applied for Social Security disability benefits, and/or has not been denied Social Security disability benefits and appealing the denial; and therefore, no Medicare Set Aside Allocation is being established. Hawkins attests that the claims released herein are not related to any illness or injury for which Hawkins would apply or receive Medicare benefits. Hawkins understands that he is required by law to disclose this information to Defendants and its attorneys in connection with this Agreement. Hawkins understands that failure to do so may result in penalties being assessed against Hawkins, the Parties, and attorneys. Hawkins declares and warrants that he is aware of the requirements of the Medicare Secondary Payer Act ("MSP"), and Hawkins understands that Medicare has an interest in recovering any benefits paid when it is used as a source of secondary payment. Hawkins therefore agrees to release, hold harmless, and indemnify Defendants from any remedies, reprisals, or penalties that result from Hawkins' failure to disclose or release Hawkins' status as a Medicare beneficiary. In the event that any of the above information provided by Hawkins is false or in any way incorrect, Hawkins shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or the like resulting from these inaccuracies. Hawkins acknowledges that Medicare may require him to exhaust the payment in Paragraph 4 on Medicare covered expenses

should he become Medicare eligible within thirty (30) months. Hawkins waives any claims for damages, including a private cause of action provided in the MSP, 42 U.S.C. Section 1395(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest.

9. **Knowing and Voluntary Agreement.** The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future. By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

10. **Remedies upon Breach.** The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any Party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

11. **Interpretation of Agreement.** The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

12. **Assignability and Binding Effect.** This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Hawkins, and shall inure to the benefit of and be binding upon Defendants and its respective successors and assigns. This Agreement may be transferred or assigned by Defendants. The obligations of Hawkins under this Agreement may not be delegated and Hawkins may not assign, transfer, or otherwise convey or dispose of this Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Hawkins shall be null, void, and without effect.

13. **No Changes to Agreement:** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Settlement and Release Agreement may be made except by a written agreement executed by all Parties hereto.

**14.** **Representations Regarding Claims:**

    **a.**    Hawkins represents that he is not aware of any claims against Defendants other than those asserted in the Action and acknowledges that he has had the opportunity to discuss this matter with counsel of his choice, including Barrett Johnston Martin & Garrison LLC and Biller & Kimble, LLC.

    **b.**    Hawkins represents and warrants that Hawkins has not sold, assigned, transferred, conveyed or otherwise disposed of to any third Party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**15.** **Multiple Originals:**  This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic or fax revisions shall be deemed originals.

DATED: _____, 2022        DEFENDANT MIDDLE TENNESSEE PIZZA, INC.

                                  Signature:_____

                                  By:_____

                                  Its:  _____

DATED: _____, 2022        DEFENDANT PATRICIA HOUSEMAN

                                  By:  _____
                                      Patricia Houseman

DATED: _____, 2022        PLAINTIFF ALVIN HAWKINS

                                  By:  _____
                                      Alvin Hawkins

5